**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kellye Evans, | No. CV-19-04339-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Scribe One Limited LLC, et al., | |
| Defendants. | |

This order resolves (1) Defendants Scribe One Limited, LLC ("Scribe One"), Dr. Bruce Tizes, and Sydney Stern's motion for summary judgment (Doc. 143); (2) Plaintiffs Kellye Evans and Evans Consulting's motion to strike certain statements, arguments, and exhibits in Defendants' reply brief (Doc. 222); Plaintiffs' motion to strike a supplemental exhibit filed in support of Defendants' summary judgment motion (Doc. 274); and Plaintiffs' motion for summary judgment (Doc. 242). For reasons explained below, Plaintiffs' motion to strike certain statements, arguments, and exhibits to Defendants' summary judgment motion is denied, Plaintiffs' motion to strike Defendants' supplemental exhibit in support of their summary judgment motion is granted, Plaintiffs' motion for summary judgment is granted, and Defendants' motion for summary judgement is granted in part and denied in part.

**I.    Plaintiffs' Motions to Strike (Docs. 222, 274)**

Plaintiffs' first motion asks the Court to strike certain statements, arguments, and

1  exhibits in Defendants' summary judgment reply brief. (Doc. 222.) Plaintiffs argue that
2  Defendants' reply makes a number of factual assertions that are not supported by citations
3  to admissible portions of the record and raises new arguments. Plaintiffs also argue that
4  Defendants submitted evidence with their reply in violation of paragraph 6(c) of the
5  Scheduling Order. (*See* Doc. 93 at 4.) This motion is denied.

6        The rules governing summary judgment motions already permit the Court to
7  disregard unsupported assertions of fact and new arguments raised for the first time in
8  reply. *See, e.g.*, Fed. R. Civ. P. 56(c)(3); *In re Allstate Life Ins. Co. Litigation*, Nos. CV-
9  09-08162-PCT-GMS, CV-09-8174-PCT-GMS, 2013 WL 5161688, at *14 (D. Ariz. Sept.
10 13, 2013) ("Bare assertions are insufficient to create a genuine issue of material fact, so the
11 Court will not consider these unsupported statements in deciding the motions for summary
12 judgment."); *Marlyn Nutraceuticals, Inc. v. Improvita Health Products*, 663 F. Supp. 2d
13 841, 848 (D. Ariz. 2009) ("The Court need not consider Defendants' position . . . since it
14 was first raised in their reply brief. Thus, even if the argument has merit, this Court cannot
15 appropriately consider it, since Plaintiffs did not have the opportunity to respond." (citation
16 omitted)). A motion to strike therefore is unnecessary. *See AIRFX.com v. AirFX LLC*, No.
17 CV 11-01064-PHX-FJM, 2012 WL 129804, at *1 (D. Ariz. Jan. 17, 2012) ("[A] motion to
18 strike in this case is unnecessary, as we do not consider new arguments raised in a reply.").
19 If, in its review, the Court determines that a party's factual assertions are unsupported, it
20 will not consider them. Likewise, if the Court determines that Defendants have raised new
21 arguments for the first time in their reply, then it will not consider them.

22       As for the evidence attached to Defendants' reply, when "new evidence is presented
23 in a reply . . . the district court should not consider the new evidence without giving the
24 [non-movant] an opportunity to respond." *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th
25 Cir. 1996) (quotation omitted). This District has repeatedly recognized, however, that
26 "[w]hile a party may not file 'new' evidence with a reply, it may file 'rebuttal' evidence to
27 contravene arguments first raised by the non-moving party in its opposition." *TSI Inc. v.*
28 *Azbil BioVigilant Inc.*, No. CV–12–00083–PHX–DGC, 2014 WL 880408, *1 (D. Ariz.

Mar. 6, 2014); *see also Advanced Reimbursement Solutions LLC v. Spring Excellence Surgical Hospital LLC*, No. CV-17-01688-PHX-DWL, 2020 WL 2768699, at *4 (D. Ariz. May 28, 2020) (same). Here, Defendants argue in their summary judgment motion that several of Plaintiffs' claims are barred by the statute of frauds. In response, Plaintiffs argue that the part performance exception to the statute of frauds applies and proceed to lay out evidence that, in their view, demonstrates that they fall within this exception. The evidence that Defendants attached to their reply brief is designed to contravene Plaintiffs' arguments about the part performance exception. It therefore qualifies as rebuttal evidence (which is appropriate), rather than new evidence (which is not).[1]

Plaintiffs' second motion asks the Court to strike a supplemental exhibit filed by Defendants, without the Court's permission, over 7 months after Defendants filed their reply brief. (Doc. 274.) This motion is granted. Regardless of any distinction between new and rebuttal evidence, an exhibit filed 7 months after Defendants filed their reply cannot reasonably be considered evidence submitted *with* the reply. The summary judgment process would become unworkable if new evidence trickled in throughout the entire time the Court has the motion under advisement. The Court will strike Defendants' supplemental exhibit (Doc. 270) because it was not authorized by any rule or court order.

**II.     Defendants' Motion for Summary Judgment (Doc. 143)**

**A. Background**[2]

The crux of this case is a dispute over the ownership of Scribe One, a medical scribe company. Scribe One was formed as a Delaware limited liability company with Stern as

---

[1] Plaintiffs' note that paragraph 6(c) of the Scheduling Order states, "No evidence may be submitted with a reply," (Doc. 93 at 4) and therefore precludes even rebuttal evidence. The undersigned's alternate procedure summary judgment procedure was designed to address frequent abuses of separate and controverting statements of fact by eliminating them and, instead, requiring parties recite all material facts in their motions and to cite directly to the relevant exhibits. *See Hunton v. American Zurich Ins. Co.*, No. CV-16-00539-PHX-DLR, 2018 WL 1182552 (D. Ariz. Mar. 7, 2018) (discussing the ways in which separate and controverting statements of fact had been misused). In stating no evidence may be submitted with a reply, paragraph 6(c) of the Scheduling Order was not intended to upend the District's longstanding distinction between new and rebuttal evidence.

[2] The parties dispute much about the nature of their business relationship. This background section provides a big-picture summary of the case. More granular details will be discussed later as they become relevant.

- 3 -

the sole member on June 29, 2017. Stern signed Scribe One's operating agreement, paid its registration fee, obtained its insurance policy, applied for its EIN, opened its bank account, registered it with the Arizona Corporation Commission, and secured a credit card for it. On paper, Scribe One appears to be wholly owned by Stern.

Evans, however, claims that she owns the company. According to Evans, she and Dr. Tizes agreed to form Scribe One in June 2017 ("Formation Agreement"), though no written copy of this agreement exists. Pursuant to the alleged Formation Agreement, Evans would transfer ownership of her preexisting medical scribe company, Evans Consulting, to Scribe One, Evans would own 70% of the new company, and Dr. Tizes would own 30%, contingent upon him making a payment to Evans equal to 30% of the gross revenues Scribe One would generate between July 1, 2017 and December 31, 2018 ("Buy-In Payment"). Tizes allegedly agreed to make the Buy-In Payment no later than 18 months after the formation of Scribe One. In breach of the Formation Agreement, Evans claims Dr. Tizes never made the Buy-In Payment and instead surreptitiously had Stern form Scribe One with Stern as its sole owner and member. In Evans' view, while Scribe One might appear on paper to be owned by Stern, it actually belongs to her based on the Formation Agreement she reached with Dr. Tizes in June 2017.

Dr. Tizes and Stern see it differently. According to them, Stern owns 100% of Scribe One and Evans was a Scribe One employee. Scribe One did not formally acquire Evans Consulting. Instead, Scribe One and Evans Consulting entered into an agreement whereby Scribe One would provide staffing and back office support to service Evans Consulting's preexisting contracts with the San Carlos Apache Healthcare Corporation ("SCAHC") at cost, while Evans Consulting (and, consequently, Evans herself) would remain entitled to the profits from those contracts ("Management Agreement"). Like the Formation Agreement, this Management Agreement is not in writing.

In her Second Amended Complaint ("SAC"), Plaintiffs bring a litany of claims, some premised on the belief that Evans owns Scribe One, others pled in the alternative and predicated on the alleged Management Agreement. (Doc. 236.) Defendants have moved

for summary judgment on all of Plaintiffs' claim except Count XII, which alleges that certain noncompete agreements signed by current or former Scribe One employees are invalid, and Count XV, which alleges defamation. (Doc. 143.)

### B. Legal Standard

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. The burden then shifts to the non-movant to establish the existence of a genuine and material factual dispute. *Id*. at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," and instead "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation and citation omitted).

### C. Discussion

#### 1. Breach of Contract

Count III of the SAC alleges that Dr. Tizes breached the Formation Agreement. (Doc. 236 at 21-22.) Dr. Tizes argues he is entitled to summary judgment on Evans' breach of contract claim because the Formation Agreement is unenforceable under the statute of

frauds. (Doc. 143 at 5-6.) Under Arizona law, an action predicated on a promise or agreement that cannot be performed within one year of its making may not be brought unless the promise or agreement is in writing and signed by the party to be charged. *See* A.R.S. § 44-101(5). Here, it would have been impossible for Dr. Tizes to perform his end of the bargain within one year because he could not calculate the Buy-In Payment within that time period. There is no written version of the Formation Agreement, let alone one signed by Dr. Tizes, the party to be charged. Accordingly, the Formation Agreement falls within the statute of frauds.

Evans does not dispute that, in general, an unwritten contract like the Formation Agreement runs afoul of the statute of frauds. Instead, she argues that the Formation Agreement is enforceable because the part performance exception to the statute of frauds applies. "The 'part performance' exception to the statute of frauds is grounded in the equitable principle of estoppel." *Owens v. M.E. Schepp Ltd. P'ship*, 182 P.3d 664, 668 (Ariz. 2008). The exception operates to preclude a party from asserting the statute of frauds as a defense "when he has induced or permitted another to change his position to his detriment in reliance on an oral agreement which would be within the [s]tatute." *William Henry Brophy College v. Tovar*, 619 P.2d 19, 22 (Ariz. Ct. App. 1980). "The label 'part performance' is in some ways a misnomer: the relevant acts need not be required by the oral agreement, but rather must be taken in reliance on the agreement." *Owens*, 182 P.3d at 668.

Part performance, however, is an especially difficult form of estoppel to prove. "So that this exception does not swallow the rule, the acts of part performance take an alleged contract outside the statute of frauds only if they cannot be explained in the absence of a contract." *Id*.

> The modern case law thus requires that any alleged act of part performance be consistent only with the existence of a contract and inconsistent with other explanations such as ongoing negotiations, or an existing relationship between the parties. If the alleged acts do not conclusively establish that a contract exists, reliance upon them would circumvent the evidentiary function of the statute.

- 6 -

*Id.* at 669 (internal citations omitted). What's more, "a party's explanations for acts of alleged part performance are not relevant because the alleged part performance must be alone and without the aid of words of promise . . . unintelligible or at least extraordinary unless as an incident of ownership." *Roe v. Austin*, 433 P.3d 569, 573 (Ariz. Ct. App. 2018).

> [T]he proponent of an alleged oral contract must show that his acts by themselves can only be explained by the existence of the contract he asserts—not that his position on the issue, as compared to the position of the other party, is more persuasive. A party's explanation of the relative strength of his position is not relevant to determining whether the part performance exception applies.

*Id.* (internal citations omitted). "Whether acts are sufficient to constitute part performance is a question of law[.]" *Id.*; *see also Tovar*, 619 P.2d at 22 ("The sufficiency of any particular acts to constitute part performance is a question of law.").[3]

Evans highlights five acts of alleged part performance that she contends are consistent only with the existence of the Formation Agreement. (Doc. 206 at 29.) The Court addresses each in turn.

First, Evans claims she transferred to Scribe One all new revenue generated by Evans Consulting, including all profits and all revenue from a SCAHC consulting contract, for which Scribe One provided no scribing services. (*Id.*; Doc. 206-7 ¶¶ 34-35.)[4] Although

---

[3] Relying on *X-Cel Sales, LLC v. A.O. Smith Corp.*, No. CV-11-01082-PHX-GMS, 2012 WL 5269302 (D. Ariz. Oct. 24, 2012), Evans argues that "summary judgment will not be granted based on the statute of frauds if the plaintiff has pointed to evidence that would allow a reasonable juror to find her actions were consistent only with the existence of the alleged contact." (Doc. 206 at 28.) It is true that in *X-Cel Sales* the district court denied summary judgment after concluding that there was sufficient evidence for a jury to find that the plaintiff's actions of part performance exempted an oral promise from the statute of frauds. *Id.* at *5. But, in doing so, the district court treated the question as one of fact for a jury, rather than one of law for the court. Such an approach is irreconcilable with the precedential decisions of the Arizona Supreme Court and Court of Appeals cited above, which the Court must follow.

[4] To support this proposition, Plaintiffs cite to Evans' declaration, as well to Exhibit DD, which Plaintiffs' exhibit list describes as "Wells Fargo Evans Consulting Bank Statements." (Doc. 206 at 10; Doc. 206-7 ¶ 35; Doc. 206-1 at 2.) But Exhibit DD consists only of a blank page with the word "PLACEHOLDER." (Doc. 206-4 at 93.) The Court has scoured the docket and cannot find Exhibit DD. It does not appear to have been filed separately under seal or as a non-electronic exhibit, such as Exhibits D and E. The printed courtesy copy sent to chambers likewise contains only a placeholder exhibit. The Court therefore does not rely on Exhibit DD for purposes of this order. Evans, however, is competent to testify about whether she transferred Evans Consulting's revenue to Scribe

the Formation Agreement is one plausible explanation for this act, it is not the only explanation. The transfer of Evans Consulting's revenue to Scribe One also is consistent with the existence of the Management Agreement, under which Evans Consulting would have been obligated to pay Scribe One for its costs in servicing the SCAHC contracts. Further, the fact that Evans transferred Evans Consulting's profits, as well as revenue from contracts that required no scribing services, is explainable without reference to the alleged Formation Agreement. In particular, Defendants claim that Evans was a Scribe One employee and, in that capacity, was responsible for invoicing Scribe One's costs to Evans Consulting and ensuring that each entity received the monies to which it was entitled. That Evans might not have been diligent about doing so does not mean that the revenue transfers from Evans Consulting to Scribe One cannot reasonably be explained by reference to a different set of relationships, namely employer-employee (as between Scribe One and Evans) and business-customer (as between Scribe One and Evans Consulting).

Next, Evans claims she made separate monetary contributions to Scribe One, independent of Evans Consulting's revenue. (Doc. 206 at 29; Doc. 206-7 ¶ 36.) In particular, Evans claims that, between July 2017 and January 2018, she "transferred an aggregate amount of over $185,000," of her own money to Scribe One as "additional operating capital during its startup months." (Doc. 206-7 ¶ 36.)[5] *Roe*, 433 P.3d at 573. One reasonable explanation for this behavior is that Evans was not a mere employee of Scribe One—she was also an equity owner. In the ordinary course, it would be unusual for an employee to contribute operating capital to a business in which she has no equity stake. But here, too, the record reveals a plausible alternate explanation. Defendants acknowledge that throughout Scribe One's startup months, Evans asked Dr. Tizes about adding her name to Scribe One's incorporation documents. (Doc. 217 at 6 n.3.)

---

One, so her declaration is sufficient to support this factual assertion for purposes of summary judgment.

[5] Evans claims that she has "verified these sums by reviewing [her] bank records and confirming the deposits with [Scribe One's] accounts at Fiscal Partners," (Doc. 206-7 ¶ 36), but she does not provide these bank records or the alleged corroborating evidence from Fiscal Partners. Nonetheless, Evans is competent to testify about money transfers she made.

- 8 -

Defendants contend that these discussions, however, reflected ongoing and ultimately unsuccessful negotiations over Evans becoming a member of Scribe One. Evans' contribution of operating capital to Scribe One during its early months therefore could be explained as part and parcel of these ongoing negotiations. Although a preexisting equity ownership agreement might be a more plausible explanation for Evans' actions, the Court is not tasked with weighing the relative strength of the parties' positions. Evans' alleged acts of part performance cannot take the Formation Agreement outside the statute of frauds unless they conclusively establish that the Formation Agreement exists.

Third, Evans claims that she was the sole source of capital for Scribe One for most of a year. (Doc. 206 at 29.) But this argument is misleading. Evans, personally, was not Scribe One's sole source of capital. Instead, the evidence shows that, during this time period, Scribe One was funded almost entirely from revenue generated from the SCAHC contracts and transferred to it from Evans Consulting. (Doc. 206-7 ¶ 37.) As previously explained, these transfers can be explained without the existence of the Formation Agreement. Likewise, the fact that Scribe One's sole source of capital for most of a year was derived from these transfers is explainable. Namely, Scribe One was a startup that received nearly all of its operating capital from a single client—Evans Consulting.

Fourth, Evans claims that she transferred all of Evans Consulting's employees to Scribe One and gave Scribe One permission to use her proprietary business information and operational tools. (Doc. 206 at 29; Doc. 206-7 ¶¶ 22-23.) But, as explained, these actions can be explained by reference to the alleged Management Agreement, and therefore do not conclusively established that the Formation Agreement exists.

Fifth, Evans claims that, although she eventually started drawing a regular salary from Scribe One, she worked for the company between July 1, 2017 and late September 2017 without drawing a salary or receiving compensation. (Doc. 206 at 29; Doc. 206-7 ¶ 31.) But this, too, can be explained without reference to the Formation Agreement. According to Defendants, the Management Agreement provided that Scribe One would service Evans Consulting's SCAHC contracts at cost, while Evans Consulting (and

therefore Evans, herself) would be entitled to keep the profits from those contracts. It also is undisputed that Evans Consulting was Scribe One's only client for most of a year. Had Evans drawn a salary from Scribe One during the company's first three months of operations, that salary would have been a cost associated with servicing the SCAHC contracts, and those costs were to be paid from the revenue generated by Evans Consulting. By not drawing a salary from Scribe One during these first few months, Evans reduced Scribe One's costs, thereby increasing by a comparable amount the residual profits to which she—through Evans Consulting—was entitled. Her work for Scribe One during its first three months does not conclusively establish that the Formation Agreement exists.

"[S]ome contracts do not bind the parties until they are executed in writing." *Tabler v. Industrial Com'n of Ariz.*, 47 P.3d 1156, 1159 (Ariz. Ct. App. 2002). This case is, in many ways, a cautionary tale about the importance of memorializing agreements in writing. Evans has marshaled a host of evidence to support her claim that she and Dr. Tizes entered into an agreement whereby she would own Scribe One. But for the part performance exception to apply, the evidence must do more than simply support Evans' claim—it must conclusively establish it, to the exclusion of other alternative explanations. Because the sufficiency of any particular acts to constitute part performance is a question of law, it falls to the Court to gauge whether Evans' conduct is explainable only by reference to the Formation Agreement. In the Court's judgment, Evans falls short of that high bar. Defendants therefore are entitled to summary judgment on Count III of the SAC because the alleged Formation Agreement upon which Count III is based falls within Arizona's statute of frauds.

### 2. Remaining Claims Predicated on Ownership

The applicability of the statute of frauds to the alleged Formation Agreement also operates to defeat the remainder of Evans' claims premised on her alleged ownership of Scribe One. This is because Evans' claim to ownership is predicated on her unwritten agreement with Dr. Tizes to go into business together, and "Arizona courts have held that 'the provision in the statute [of frauds] prohibiting any action to be brought on an oral

contract within the statute includes action based indirectly on the contract[.]'" *Realty Executives International Services LLC v. Devonshire Western Canada Limited*, No. CV-17-02671-PHX-DGC, 2020 WL 5057655, at *6 (D. Ariz. Aug. 27, 2020) (quoting *Lininger v. Sonenblick*, 532 P.2d 538, 541 (Ariz. Ct. App. 1975)).

In Count I of the SAC, Plaintiffs seek a declaratory judgment that Evans owns 100% of Scribe One. (Doc. 236 at 19.) This claim cannot proceed because it is based indirectly on the Formation Agreement.[6] Defendants are entitled to summary judgment on Count I.

In Count II, Evans claims that Dr. Tizes fraudulently induced her into believing that she would own 70% of Scribe One, and that he would own 30% contingent upon making the Buy-In Payment. (Doc. 236 at 20.) But Arizona courts have held that "[s]ince the provision in the statute prohibiting any action to be brought on an oral contract within the statute includes action based indirectly on the contract, an action for damages cannot be maintained on the ground of fraud in refusing to perform the contract, even though the defendant at the time of the making of the oral contract may have had no intention of performing it." *Lininger*, 532 P.2d 541 (internal quotation and citation omitted). Stated another way, reasonable reliance is a necessary element of fraud, and "a party has no right to rely upon oral representations that are unenforceable because they are required to be memorialized in writing." *Scott v. Nussbaum*, No. 1 CA–CV 16–0583, 2018 WL 1601745, at *2 (Ariz. Ct. App. Apr. 3, 2018). Defendants are entitled to summary judgment on Count II.

Count IV alleges that Dr. Tizes breached the covenant of good faith and fair dealing implied within the Formation Agreement. (Doc. 236 at 22.) "A claim for breach of the covenant of good faith and fair dealing implied in the [Formation Agreement] clearly is based indirectly on that agreement. As a result, the claim is also barred by the statute of

---

[6] Plaintiffs argue that the Declaratory Judgment claim survives because it is not based on the existence of the Formation Agreement. (Doc. 264 at 4.) But the Declaratory Judgment Act is procedural only; it does not create an independent cause of action. If the substantive claim underpinning Evans' claim of ownership—here, that she and Dr. Tizes agreed in 2017 that she would own the company—fails, then Evans' request for declaratory relief likewise must fail. *See Harr, LLC v. Town of Northfield*, 423 F. Supp. 3d 54, 66-67 (D. Vt. Nov. 1, 2019).

- 11 -

frauds." *Realty Executives*, 2020 WL 5057655, at *6. Defendants are entitled to summary judgment on Count IV.

Count V is for conversion, and it alleges again that Evans is the true owner of Scribe One, and that Dr. Tizes and Stern are unlawfully exercising dominion and control over Scribe One. (Doc. 236 at 23.) Because Evans' claim to ownership of Scribe One is fundamentally predicated on the Formation Agreement, her conversion claim is indirectly based on this agreement. Count V therefore cannot proceed, and Defendants are entitled to judgment as a matter of law.

Count VI alleges that Stern and Dr. Tizes filed false and misleading documents with the Arizona Corporation Commission. According to the SAC, the reason these documents were false or misleading is because they claimed that Stern, rather than Evans, owns Scribe One. (Doc. 236 at 24.) Because Evans' claim to ownership is based on an unenforceable agreement, Count VI fails. The pertinent false recordings statute creates a cause of action for the LLC, its creditors, and its members. *See Chabrowski v. Litwin*, No. CV-16-03766-PHX-DLR, 2017 WL 3719871, at *2 (D. Ariz. Aug. 29, 2017) (citing A.R.S. § 29-858). Evans argues she has standing to bring this claim in her capacity as a Scribe One member (Doc. 206 at 37), but her membership claim is predicated on an unenforceable agreement with Dr. Tizes. Accordingly, Defendants are entitled to summary judgment on Count VI.

Count VII seeks a constructive trust over Scribe One based on Evans' belief that she rightfully owns the company and Tizes and Stern are unlawfully exercising control over it. (Doc. 236 at 25.) But a constructive trust is an equitable remedy for an underlying claim, it is not a substantive claim on its own. *See Cal X-Tra v. W.V.S.V. Holdings, LLC*, 276 P.3d 11, 43 (Ariz. Ct. App. 2012). Because the Court has granted summary judgment on the underlying claims, Evans is not entitled to a constructive trust remedy. Defendants are entitled to summary judgment on Count VII.

### 3. Claims Pled in the Alternative

Counts VIII-XV of the SAC are pled in the alternative, based on Defendants' theory that Evans was a Scribe One employee and that Scribe One and Evans Consulting entered

into a Management Agreement for the servicing of the SCAHC contracts. Defendants seek summary judgment on all except Counts XII and XV.

Count VIII is for unjust enrichment. "An unjust enrichment claim requires proof of five elements: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." *Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 283 P.3d 45, 49 (Ariz. Ct. App. 2012) (internal quotation and citation omitted). Plaintiffs allege that Defendants have been unjustly enriched because Evans and Evans Consulting contributed capital and valuable services to Defendants in order to launch Scribe One, which they accepted and benefited from without compensating Plaintiffs for those benefits. (Doc. 236 at 25.) Defendants argue that they are entitled to summary judgment on this claim because Evans did, in fact, benefit for her services—she received a salary. (Doc. 143 at 12.) This is a fair point. But, as described earlier in this order, Evans has proffered evidence that she gave $185,000 to Scribe One as operating capital during its first six months of existence. She also has proffered evidence that she worked for Scribe One during its first three months of existence without drawing a salary. Finally, everyone agrees that Evans Consulting transferred more money to Scribe One than Scribe One was owed for servicing the SCAHC contracts. These items are sufficient evidence of an enrichment and an impoverishment. Summary judgment on Count VIII is inappropriate.

Count IX is for conversion and alleges that Defendants are unlawfully exercising dominion and control over excess revenue transferred from Evans Consulting to Scribe One, to which Evans Consulting would be entitled under the Management Agreement. (Doc. 236 at 26.) Conversion is "an act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another." *Case Corp. v. Gehrke*, 91 P.3d 362, 365 (Ariz. Ct. App. 2004) (internal citation omitted). Defendants admit that Scribe One currently possess such excess funds (although the parties dispute the amount). (Doc. 255 at 2.) They nonetheless argue that they are entitled to summary judgment

1   because they "are more than happy to release any profits that are due to Plaintiffs" once
2   the correct amount has been identified. (Doc. 143 at 12.) At minimum, Defendants admit
3   that they owe Plaintiffs $147,209.00. Defendants continue to exercise dominion and
4   control over at least this amount, and Plaintiffs' expert opines that the amount is even
5   greater. (*Id.*) That Defendants might be willing to voluntarily relinquish these sums does
6   not change the fact that they still exercise dominion and control over them. Defendants
7   motion for summary judgment on this claim is denied.

8   Count X alleges that Scribe One anticipatorily breached the Management
9   Agreement "by notifying Evans Consulting that it will no longer provide services under
10  the contract, which would include ceasing to provide scribes to Evans Consulting." (Doc.
11  236 at 27.) Defendants argue that this claim fails because there is no evidence that the
12  Management Agreement could not be terminated at will and, in the event Plaintiffs claim
13  that the Management Agreement could not be terminated at will, it would violate the statute
14  of frauds because it was unwritten and Scribe One serviced the SCAHC for approximately
15  two years. (Doc. 143 at 13.) Plaintiffs counter that the Management Agreement was not
16  terminable at will; instead, Scribe One agreed to service the SCAHC contracts and,
17  therefore, the Management Agreement's term was coextensive with the existence of the
18  SCAHC contracts. (Doc. 206 at 39.) Plaintiffs cite to Exhibit B as the SCAHC contract.
19  (Doc. 206-7 ¶ 5.) According to Exhibit B, the SCAHC contract was for a term of 20
20  months, although either party, for any reason, could terminate the agreement upon 60 days
21  written notice. (Doc. 206-2 at 15.) Had SCAHC chosen, for example, to terminate its
22  contractual relationship with Evans Consulting within a year of the Management
23  Agreement, then Scribe One would no longer have been required to service that contract.
24  Accordingly, Plaintiffs argue that the statute of frauds does not apply because it was
25  possible for the Management Agreement to be fully performed within a year of its making.
26  (Doc. 206 at 39.)

27  On this score, the Court finds Plaintiffs have the better argument. Defendants admit
28  that the Management Agreement exists. The parties disagree over whether the

Management Agreement was terminable at will or whether Scribe One was obligated under that agreement to service Evans Consulting's SCAHC contracts until those contracts terminated. Although the Management Agreement is unwritten, it does not fall within the statute of frauds because, under either side's account, it could have been fully performed within a year. The dispute over the Management Agreement's durational term precludes the Court from granting summary judgment.[7]

Count XI is a claim for breach of the covenant of good faith and fair dealing based on Scribe One's conduct in withdrawing from the Management Agreement. (Doc. 236 at 28.) Defendants argue that this claim fails because the Management Agreement is either unenforceable or was terminable at will, in which case there was nothing wrongful about their conduct. (Doc. 143 at 14.) Because the Court finds a genuine dispute of material fact over the duration of the Management Agreement, and because the durational term advocated by either side would comport with the statute of frauds, the Court denies summary judgment on this claim.

Count XIII alleges that Defendants intentionally interfered with Evans Consulting's SCAHC contracts by no longer providing scribes to Evans Consulting under the Management Agreement and by notifying SCAHC personnel that Evan had been terminated from Scribe One, leading SCAHC to believe that Evans Consulting would be unable to fulfil its contractual obligations. (Doc. 236 at 31.) This claim requires the "(1) existence of a valid contractual relationship, (2) knowledge of the relationship on the part of the interferor, (3) intentional interference inducing or causing a breach, (4) resultant damage to the party whose relationship has been disrupted, and (5) that the defendant acted improperly." *Safeway Ins. Co., Inc. v. Guerrero*, 106 P.3d 1020, 1025 (Ariz. 2005) (internal quotation and citation omitted). "[P]roof that an actor intentionally induced a breach of contract is not sufficient to establish that the actor's conduct was improper. Rather, there is a requirement that the interference be both intentional and improper." *Id.*

---

[7] Defendants alternatively argue that the Management Agreement is unenforceable because it called for the transfer of employees, treating them like chattel. (Doc. 143 at 14.) Defendants cite no authority for this argument.

- 15 -

at 1026 (internal quotation and citation omitted).

Defendants argue that they are entitled to summary judgment on this claim to the extent it is predicated on Evans' termination because Evans was, in fact, terminated from Scribe One (Doc. 96) and Scribe One "had a legal obligation to inform third parties with whom it does business, including San Carlos's staff, that Evans was no longer affiliated with the company, so as to prevent her from exercising any apparent authority on its behalf, and to prevent third parties from inadvertently communicating with her instead of Scribe One, when they intended to communicate with Scribe One." (Doc. 143 at 14.) The Court agrees. There was nothing improper about Scribe One communicating relevant and truthful information to SCAHC.[8]

But Defendants' motion does not address the other factual predicate for this claim, namely that Defendants intentionally interfered with Evans Consulting's contractual relationship with SCAHC by ceasing to supply scribes to Evans Consulting to service that contract, thereby impairing Evans Consulting's relationship with SCAHC. (Doc. 143 at 14.) The Court therefore denies summary judgment on Count XIII to the extent it is predicated on Defendants' actions in ceasing to provide scribes to service the Evans Consulting SCAHC contracts.

Finally, Count XIV seeks a constructive trust over any funds that Defendants possess which belong to Evans Consulting. (Doc. 236 at 32.) As previously noted, a constructive trust is a remedy, not an independent claim for relief. Defendants argue, however, that this remedy is inappropriate because the money in their possession is fungible, and therefore not traceable to the funds that Evans Consulting long ago transferred to Scribe One. (Doc. 143 at 16.) The Court agrees. "[a] constructive trust is an equitable remedial device that may be utilized whenever title to property has been obtained through actual fraud, misrepresentation, concealment, undue influence, duress, or through any other means which render it unconscionable for the holder of legal title to

---

[8] Plaintiffs argue that there is a dispute over whether Defendants had authority to terminate Evans from Scribe One because Evans contends, she owns the company. (Doc. 206 at 40.) This argument ignores that this claim is brought in the alternative, and therefore is not predicated on Evans' owning Scribe One.

continue to retain and enjoy its beneficial interest. A prerequisite to the imposition of a constructive trust is the identification of a specific property belonging to the claimant." *Linderoth Assocs., Architects Inc. v. Amberwood Dev., Inc.*, No. 06-0426-PHX-NVW, 2006 WL 8440851, at *3 (D. Ariz. Dec. 19, 2006) (internal citations and quotations omitted). A constructive trust is not an appropriate remedy for a claim that "is essentially one for money damages." *Johnson v. Am. Nat. Ins. Co.*, 613 P.2d 1275, 1279 (Ariz. Ct. App. 1980). Such is the case here. Everyone agrees that, over the course of the Management Agreement, Evans Consulting overpaid Scribe One for its services and, therefore, Scribe One owes Evans Consulting money. But Plaintiffs' claims are adequately redressable by money damages, rather than a constructive trust. Indeed, there is no evidence that Scribe One currently possess the precise funds that Evans Consulting transferred to it, and therefore any constructive trust would not be over specific property belonging to Plaintiffs, but instead over an amount of Scribe One's general fisc sufficient to satisfy a damages award. This is not the purpose of a constructive trust. The Court will grant summary judgment on Count XIV of the SAC.

### D. Conclusion

To summarize, the Court grants summary judgment for Defendants on the following counts from the SAC: Counts I, II, III, IV, V, VI, VII, XIV. The remaining claims survive.

## III. Plaintiffs' Motion for Summary Judgment (Doc. 242)

Plaintiffs seek summary judgment on Count XII of the SAC and Count III of Defendants' counterclaim.

Count XII of the SAC alleges that, after Evans Consulting transferred its scribes to Scribe One, Scribe One required those scribes to sign non-compete agreements. (Doc. 236 at 30; Doc. 242 at 7.) According to Plaintiffs, after being terminated from Scribe One, Evans sought to mitigate her damages by creating a new scribe company called Essential Scribe but Scribe One's non-compete provisions hinder her ability to hire staff. (Doc. 242-2 ¶¶ 3, 4.) Plaintiff seeks a declaration that Scribe One's non-compete provisions are unenforceable.

- 17 -

"Arizona law does not look kindly upon restrictive covenants." *Unisource Worldwide, Inc. v. Swope*, 964 F. Supp. 2d 1050, 1063 (D. Ariz. 2013). "[A] covenant not to compete is invalid unless it protects some legitimate interest beyond the employer's desire to protect itself from competition." *Valley Med. Specialists v. Farber*, 982 P.2d 1277, 1281 (Ariz. 1999).

> A covenant is reasonable and will be enforceable only if: (1) the restraint is no greater than is necessary to protect the employer's legitimate interest; and (2) that interest is not in contravention of public policy or outweighed by the burden on the employee. To that end, to be enforceable, the covenant must be reasonable with respect to its duration, its geographic scope, and the range of employee's activities affected. Further, any restraint on an employee's activities must be limited to the particular specialty of the present employment. The burden is on the employer to prove the extent of its protectable interests.

*Unisource*, 964 F. Supp. 2d a 1063-64 (internal citations omitted).

Plaintiffs argue that Scribe One's non-compete provisions are unenforceable because they (1) are unlimited in geographic scope, (2) apply to too broad a scope of business and are not limited to scribing activities,[9] and (3) extend for an unreasonable amount of time. (Doc. 242 at 10-13.) The Court agrees. The standard non-compete provision contains no geographic limitation, and "Arizona courts do not enforce non-compete agreements with unlimited geographical reach." *Pathway Med. Tech., Inc. v. Nelson*, No. CV11–0857 PHX DGC, 2011 WL 4543928, at *5 (D. Ariz. Sept. 30, 2011). It also prohibits former employees from "direct or indirect engagement or participation, either individually or as an independent contractor, employee, principal, partner, agent, trustee, officer, director or shareholder of a corporation, partnership or other business entity, in any business that provides services or goods to any of Scribe One past or present Clients and/or medical professionals." (Doc. 287 at 74.) As written, then, the provision would prevent former scribes from working for any business that provides any services or goods to current or former Scribe One clients, even goods and services that are unrelated to scribing. Finally, Scribe One's non-compete provisions range in duration from 12 to 18

---

[9] The Court views Plaintiffs second and fourth arguments as speaking to the same general problem.

- 18 -

months (Doc. 242-2 ¶ 5.)  In Arizona, "a covenant is unreasonable if it lasts beyond the time necessary to train a replacement." *Caldwell v. J & J Rocket Company*, 680 Fed. App'x 632, 633 (9th Cir. 2017).  Here, the evidence shows that Scribe One is capable of training a new scribe within 4 weeks.  (Doc. 242-2 ¶ 8.)

Defendants fail to respond to Plaintiffs' arguments because Defendants erroneously believed Plaintiffs were moving for summary judgment on Count V of Defendants' counterclaim (which is not predicated on the non-compete agreements), rather than on Count XII of Plaintiffs' SAC.  (Doc. 255 at 7-10.)  Accordingly, the Court grants summary judgment for Plaintiffs on Count XII of the SAC.

Finally, Plaintiffs seek summary judgment on Count III of Defendants' counterclaim, which alleges that Evans Consulting breached the Management Agreement by failing to pay Scribe One for all services rendered.  (Doc. 128 at 22.)  Plaintiffs argue that Defendants can establish neither a breach nor damages because it is undisputed that Evans Consulting overpaid Scribe One (although the precise amount is in dispute). Defendants counter that summary judgment is inappropriate because Plaintiffs dispute the very existence of the Management Agreement.  But any dispute about the existence of the Management Agreement is immaterial.  Even if a jury resolved the factual dispute about the existence of the Management Agreement in Defendants' favor, a jury still could not find for Defendants on Count III of their counterclaim because Evans Consulting indisputably overpaid under the Management Agreement.  Plaintiffs therefore are entitled to summary judgment on Count III of the counterclaim.

**IV.  Requests for Attorneys' Fees**

The parties have developed a habit of ending their motions with requests for attorneys' fees.  In the ordinary course, the Court does not adjudicate entitlement to fees on a motion-by-motion basis.  If, after the entry of judgment, a party believes it is entitled to attorneys' fees, Local Rule of Civil Procedure 54.2 provides a procedure for requesting them.  Accordingly, the parties' various requests for attorneys' fees are denied, but nothing in this order precludes the parties, after entry of judgment, from seeking fees in a manner

that complies with LRCiv 54.2 if they believe there is a statutory or contractual basis for such an award.

**IT IS ORDERED** as follows:

1. Plaintiffs' motion to strike (Doc. 222) is **DENIED**.
2. Plaintiff's motion to strike (Doc. 274) is **GRANTED**.
3. Defendants' motion for summary judgment (Doc. 143) is **GRANTED IN PART and DENIED IN PART** as explained herein.
4. Plaintiffs' motion for summary judgment (Doc. 242) is **GRANTED**.
5. The parties shall participate in a telephonic trial scheduling conference on **February 3, 2022, at 10:45 a.m**. Call-in instructions will be provided via separate email.

Dated this 20th day of January, 2022.

Douglas L. Rayes
United States District Judge