**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kellye Evans, et al., | No. CV-19-04339-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| Scribe One Limited LLC, et al., | |
| Defendants. | |

At issue is whether the Court should grant summary judgment for Plaintiffs on Defendants counterclaims for breach of fiduciary duty and intentional interference with contracts.

On September 13, 2022, Plaintiffs filed a motion in limine to exclude evidence of undisclosed damages. (Doc. 316.) Plaintiffs argued that, although Defendants had included a demand for compensatory damages in their counterclaim complaint, they failed to disclose a computation of these damages. Defendants filed a response to that motion on September 30, 2022 (Doc. 328), and the Court first heard argument on the issue during a November 10, 2022 conference. After hearing from the parties, the Court ruled as follows:

> I'm going to leave it a little bit open, but I'm going to grant the motion to exclude evidence of undisclosed damages. I think at this point in time, with experts involved and all their opinions and reports pertaining to damages, it would not be harmless to allow undisclosed evidence to be presented at trial as damages. However, I'm not ruling that the profits through the [United Indian Health Services ("UIHS")] contract have not been disclosed because I'm not clear from what you guys have told

> me whether it has been or not. So at trial or before trial, if you can show me where it has been disclosed as your damages, you're welcome and they're available to be used at trial. But if they haven't been disclosed -- and they don't have to be in a formal 26(a)(1)(iii) disclosure. If they're in the form of an expert report or in the form of a letter or an email, that's fine, as long as you've told Ms. Ames that these are the damages we're claiming in some capacity, in any capacity. Anywhere you've shown her that, then I think it would be fair for it to be evidence. But if it hasn't been fairly disclosed anywhere, then I think at this late date it's -- with involving experts and damages, it's not harmless, and there has been no good cause for a delay if we haven't done it by now.

(Doc. 341 at 37-38.)

The parties then re-briefed the disclosure issue at the end of December 2022 (Docs. 356, 357, 362), and the Court heard re-argument during the January 3, 2023 final pretrial conference (Doc. 383). After hearing from the parties, the Court ruled as follows:

> I'm going to find that this evidence will not be admitted. Plaintiffs' expert, Taylor, will not be allowed to provide testimony or evidence on behalf of the defendants' counterclaim theory for breach of fiduciary duty or for anything else because it hasn't been disclosed, and the lack of timely disclosure was not justified and is not harmless.

(*Id.* at 28.)

At the end of December 2022, the parties also briefed whether Defendants had adequately disclosed a theory of liability underlying their intentional interference with contracts counterclaims. (Docs. 358, 362.) The Court heard argument on this issue during the January 3, 2023 final pretrial conference, after which it ruled as follows:

> I don't think it's been fairly disclosed as a theory. I don't think you can just come in here and make general allegations that almost touch on it. I mean, your allegations in paragraphs 59 through 65 do talk about the loss of scribes, but it talks about that being the result of conduct by Evans and Evans Consulting, and I don't think -- I think it would be asking a lot for the plaintiffs to understand that your theory was that Evans Consulting and Evans would interfere with a contract involving Evans Consulting. That's how it's phrased in the counterclaim, and I'm not going to require the plaintiffs to be that able to decipher what you've alleged. So I'm going to find that that's already been ruled on with regard to the meaning of those noncompete clauses and this is not an additional theory that was alleged.

(Doc. 383 at 39-40.)

On January 6, 2023, Plaintiffs filed a motion asking the Court to enter summary judgment in their favor on Defendants' breach of fiduciary duty and intentional interference with contracts counterclaims based on these pretrial rulings, citing Federal Rule of Civil Procedure 56(f) as the basis of their request. (Doc. 376.) On January 9, 2023, the Court directed Defendants to respond to that motion by no later than January 11, 2023. (Doc. 377.) On January 10, 2023, Defendants moved to strike Plaintiffs' motion, arguing that it was procedurally improper. (Doc. 382.) The following day, the Court granted Defendants' motion to strike, agreeing that it was procedurally improper for Plaintiffs to request summary judgment under Rule 56(f), which only comes into play when the Court intends to *sua sponte* grant summary judgment on a basis that no party has asked for. (Doc. 384.) But the Court also notified Defendants that it intended to consider *sua sponte* summary judgment for the same reasons Plaintiffs identified in their now stricken motion and ordered Defendants to respond by the end of the day.

Federal Rule of Civil Procedure 56(f)(3) permits the Court to "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute" and providing notice and a reasonable time for the parties to respond. In their response, Defendants object to the time afforded them to respond. (Doc. 385 at 2.) This objection is overruled. The parties briefed and argued these issues extensively prior to and at the January 3, 2023 final pretrial conference. And Defendants knew the Court was interested in their position on the propriety of summary judgment when the Court ordered a response on January 9, 2023. Though the response deadline was brief, the question posed was straightforward, and the expedited briefing schedule was largely a function of the fast-approaching trial date and the countless last-minute issues raised by the parties.

On the merits, Defendants' breach of fiduciary duty and intentional interference with contracts counterclaims fail as a matter of law in light of the Court's pretrial rulings. "[I]n an action asserting a claim for breach of fiduciary duty, like all tort actions, a plaintiff must allege and prove the existence of a duty owed, a breach of that duty, and damages causally related to such breach." *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d

997, 1004 (D. Ariz. 2011) (internal quotation and citation omitted). Given the Court's order precluding Defendants from using evidence of undisclosed damages, Defendants necessarily cannot prove all elements of this claim. Similarly, a claim for intentional interference with contracts requires the "(1) existence of a valid contractual relationship, (2) knowledge of the relationship on the part of the interferor, (3) intentional interference inducing or causing a breach, (4) resultant damage to the party whose relationship has been disrupted, and (5) that the defendant acted improperly." *Safeway Ins. Co., Inc. v. Guerrero*, 106 P.3d 1020, 1025 (Ariz. 2005) (internal quotation and citation omitted). Defendants originally accused Evans Consulting of interfering with the employment agreements between Scribe One and its scribes by inducing those scribes to leave their employment with Scribe One and start employment with Evans Consulting, in violation of the non-complete clauses in their employment contracts. (Doc. 128 at 23-24.) In a January 21, 2022 order, the Court ruled that those non-compete clauses are unenforceable. (Doc. 288 at 17-19.) Defendants later advanced a theory that the relevant contractual relationship was the Management Agreement between Scribe One and Evans Consulting. Defendants contended that Evans interfered by causing a "mass exodus" of scribes from Scribe One, making it impossible for Scribe One to meet its obligations under the Management Agreement. (Doc. 383 at 36.) The Court ruled that Defendants had not adequately disclosed this new theory of liability and therefore were precluded from advancing it at trial. The logical implication of this ruling is that Defendants' intentional interference with contracts counterclaim fails as a matter of law because Defendants cannot establish the first element—the existence of a valid contractual relationship.[1]

Defendants' response to the Court's Rule 56(f) notice rests entirely on convincing this Court to reconsider its pretrial rulings. Motions for reconsideration should be granted only in rare circumstances. *Defenders of Wildlife v. Browner,* 909 F. Supp. 1342, 1351 (D.

---

[1] In their response to the Court's Rule 56(f) notice, Defendants claim that their intentional interference with contracts counterclaim is based on Evans' actions related to the UIHS contract. (Doc. 385 at 3.) This argument is rejected because it flatly contracts Defendants' express, unambiguous representation during oral argument that their intentional interference claim is *not* based on the UIHS contract. (Doc. 383 at 36.)

- 4 -

Ariz. 1995). Mere disagreement with a previous order is an insufficient basis for reconsideration. *See Leong v. Hilton Hotels Corp.,* 689 F. Supp. 1572, 1573 (D. Haw. 1988). A motion for reconsideration ordinarily will be denied "absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." LRCiv 7.2(g). Further, the motion must "point out with specificity the matters that the movant believes were overlooked or misapprehended by the Court, any new matters being brought to the Court's attention for the first time and the reasons they were not presented earlier, and any specific modifications being sought in the Court's Order." *Id.* Finally, "[n]o motion for reconsideration . . . may repeat any oral or written argument made by the movant in support of or in opposition to the motion that resulted in the Order." *Id.* The court may deny a motion for reconsideration if it fails to comply with these rules. *Id.*

Defendants fail to identify any new facts or legal authority that could not have brought to the Court's attention earlier with reasonable diligence. Indeed, Defendants have had ample notice of these disclosure issues and were afforded plenty of time to respond. The Court heard extensive arguments on November 10, 2022 and January 3, 2023. Nor have Defendants shown that the Court's preclusion orders were manifestly erroneous. Defendants cite to the Court's Mandatory Initial Discovery Pilot for the proposition that new information need not be present in a supplemental response if it is revealed in a written discovery response or deposition, but that provision only applies if that revelation occurs "in a manner that reasonably informs all parties of the information[.]" *See* General Order 17-08 ¶ A8. Here, the Court concluded after reviewing written briefing and hearing thorough oral arguments that Defendants had disclosed neither a computation of damages nor their new theory of intentional interference with contracts liability, and that stray information that came out through written discovery and depositions did not place Plaintiffs on reasonable notice that Defendants' intentional interference with contracts counterclaim was predicated on the theory that Evans interfered with the Management Agreement between Scribe One and Evans Consulting, or of a computation of Defendants'

damages for their breach of fiduciary duty counterclaim. Defendants instead reiterate their past positions, express their disagreement with the Court's rulings, and ask it to rethink what it has already thought through. This is not an appropriate basis for reconsideration.

For these reasons,

**IT IS ORDERED** that summary judgment is granted for Plaintiffs on Defendants' breach of fiduciary duty and intentional interference with contracts counterclaims pursuant to Rule 56(f)(3).

Dated this 13th day of January, 2023.

Douglas L. Rayes
United States District Judge